# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 08-CV-3483 (JFB)

———————————

## WILLIAM NEALY,

Petitioner,

### VERSUS

## DALE ARTEST,

Respondent.

———————————

**MEMORANDUM AND ORDER**
February 25, 2014

———————————

JOSEPH F. BIANCO, District Judge:

William Nealy ("Nealy" or "petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction for one count of assault in the second degree, one count of criminal possession of a weapon in the third degree, one count of resisting arrest, and one count of menacing in the third degree. Petitioner challenges his conviction on the following grounds: (1) petitioner's conviction was the result of an illegal seizure, as it was based on evidence acquired during an unconstitutional search and seizure, and arose from an arrest for which the police had no probable cause; (2) petitioner's conviction was obtained in violation of the privilege against self-incrimination because his parole officer presented evidence that should have been suppressed, and further, alleged that petitioner made an incriminating statement; (3) the prosecutor failed to disclose evidence favorable to petitioner; (4) petitioner was deprived of the effective assistance of trial counsel; (5) the prosecutor committed prosecutorial misconduct, including conspiring with the defense attorneys and a parole officer to secure an unlawful conviction, interfering with petitioner's right to counsel, committing selective and malicious prosecution, and forcing a waiver of petitioner's rights; (6) petitioner's prior conviction is unconstitutional and should not have been used against petitioner in calculating his sentence; and (7) petitioner is actually innocent of the underlying allegations, as another individual (petitioner's nephew) confessed to the crime, and further, an eyewitness attests that petitioner was not present at the crime scene.

For the reasons set forth herein, the Court concludes that petitioner has not demonstrated any basis for habeas relief, and denies the instant petition. Specifically, petitioner has procedurally defaulted on his

first, second, fifth, and sixth grounds for relief. In an abundance of caution, however, the Court considers all of petitioner's claims on the merits and concludes that none warrant habeas relief. Accordingly, the habeas petition is denied in its entirety.[1]

## I. BACKGROUND

### A. Facts

The following facts were adduced from the petition and documents attached thereto, as well as from the state court's trial and appellate record.

The instant petition stems from petitioner's conviction, following a jury trial, of assault in the second degree (N.Y. Penal Law § 120.05), criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02), resisting arrest (N.Y. Penal Law § 120.15), and menacing in the third degree (N.Y. Penal Law § 205.30).

According to the evidence presented by the prosecution at trial, at approximately 2:45 a.m. on April 10, 2001, petitioner slashed Donald Lanier's ("Lanier") face with a razor/box cutter outside the Bamboo Lounge in Hempstead, Nassau County. (Tr. at 349–62.) Petitioner proceeded to chase the victim's brother, Patrick Lanier ("Patrick"), swinging at him with the razor/box cutter. The altercation arose from a racial comment uttered by Patrick when he lost money in a game of dice. (*Id.* at 353.) As a result of the incident, Lanier received approximately forty stitches and suffered a three-and-one-half inch scar on the left side of his face; Patrick evaded injury. (*Id.* at 356.) Immediately following the incident, the brothers reported the occurrence to the police. (*Id.* at 363.)

On April 15, 2001, Lanier confronted petitioner in a local bar. During this encounter, Lanier inquired as to why petitioner had cut him; petitioner, without denying the attack, asked Lanier to forget the matter. Lanier responded that he could not forget it unless petitioner agreed to engage in a fair fight to settle the dispute. (*Id.* at 393.) Petitioner refused to fight Lanier. This exchange prompted Lanier to approach a police vehicle that happened to be parked outside, and to report petitioner as his assailant from the incident that occurred on April 10, 2001. (*Id.* at 400–03.) Petitioner tried to avoid attention by slowly backing away from the scene and pulling a red bandana over his mouth. (*Id.* at 854–55.) However, once identified and approached by the officer, petitioner refused to discuss the accusation, cursed at the officer, and eventually fled on foot. (*Id.* at 856–64.)

The officer pursued petitioner. Once caught, petitioner resisted the officer's attempt to handcuff him by kicking and flailing his arms. (*Id.* at 865–70.) Additional police assistance was necessary to secure petitioner into police custody. (*Id.* at 944–50.)

---

[1] Respondent also argues that petitioner's failure to sign his petition for a writ of habeas corpus warrants dismissal. *See* Rule 2(c)(5), 28 U.S.C. foll. § 2254 ("The petition must . . . be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242."). However, petitioner has since filed an amended, signed petition, thereby curing this defect. *See, e.g.*, *Blake v. Johnson*, No. 10-CV-00572, 2011 WL 2117954, at *1 n.1 (W.D. Va. May 27, 2011) (noting that court "conditionally filed the [unsigned habeas] petition and requested petitioner's signature in an amended petition, which he executed"); *Enriquez v. Calderon*, No. C01-2802 MMC (PR), 2001 WL 1456758, at *1 (N.D. Cal. Nov. 9, 2001) (accepting amended, signed habeas petition after original, unsigned petition was dismissed without prejudice).

At trial, Parole Officer Robert Billings ("Parole Officer Billings") testified that he had contact with petitioner regarding the April 10, 2001 incident. (*Id.* at 734–38.) Parole Officer Billings testified that petitioner had attempted to visit his parole officer, who was not in the office that day. (*Id.* at 737.) Parole Officer Billings recorded petitioner's visit on a note, which he left for petitioner's parole officer upon his return. (*Id.* at 738.) The note, which was admitted in evidence, referred to a fight between two men that occurred at the Bamboo Lounge, and stated that petitioner was stopped by a police officer, but was not arrested. (*Id.* at 738–39.) Moreover, the note mentioned that, during petitioner's meeting with Parole Officer Billings, he asked for a travel pass to South Carolina. (*Id.* at 739.) During cross-examination, defense counsel highlighted that Parole Officer Billings did not record his encounter with petitioner on his day sheet, which is intended to serve as an additional source of verification for meetings held. (*Id.* at 758–64.)

In the course of Lanier's testimony at trial, Alfred Antoine ("Antoine") was identified as the individual who handed the razor/box cutter to petitioner. Despite petitioner's desire to have Antoine testify, neither the prosecution nor defense counsel called Antoine as a witness.

Defense counsel called Vicki Lewis ("Lewis") to testify on petitioner's behalf. During direct questioning by the defense, Lewis's past criminal activities, including shoplifting, drug possession, assault on a police officer, and violation of probation came to light. (*Id.* at 1042–46; 1087–97.) Lewis testified that she had a phone conversation with petitioner at 1:30 a.m. on the night of the incident. (*Id.* at 1049.) Lewis claimed that petitioner told her police were questioning him, but he would be leaving the scene to meet up with her as soon as he

could. (*Id.*) Lewis further testified that petitioner arrived at her house around 2:30 a.m. and stayed there for the rest of the night. (*Id.* at 1050.)

On April 24, 2001, petitioner's attorney, Michael Berger ("Berger"), waived petitioner's right to a speedy trial, speedy preliminary hearing, and speedy grand jury presentation. Shortly thereafter, Berger was relieved from representing petitioner due to a conflict of interest, and Jeff Groder ("Groder") was assigned as defense counsel. Following trial by jury, petitioner was found guilty of all of the charges brought against him.

### B. Procedural History

Petitioner was tried on the charges of assault in the second degree (N.Y. Penal Law § 120.05), criminal possession of a weapon in the third degree (N.Y. Penal Law § 160.15), resisting arrest (N.Y. Penal Law § 160.15), and menacing in the third degree (N.Y. Penal Law § 160.15). Prior to trial, petitioner's attorney, Groder, brought a motion pursuant to New York Criminal Procedure Law ("C.P.L.") § 30.30, claiming that petitioner's statutory speedy trial right had been violated. On February 25, 2002, this motion was denied.

#### 1. Moving to Set Aside the Verdict

On April 15, 2002, following his jury conviction, Nealy moved to set aside the verdict pursuant to C.P.L. § 330.30. In this motion, petitioner alleged, *inter alia*, that the prosecution had improperly withheld information regarding the identity of a possible accomplice (Antoine). (Resp't Aff. and Mem. of Law in Supp. of Opp'n to Habeas Corpus Pet. ("Resp't Opp'n") at 4–

5; Def.'s C.P.L. § 330.30 Mot.[2]) He also asserted that newly discovered evidence created the possibility of a more favorable verdict for petitioner had it been presented at trial. (Resp't Opp'n at 5; Def.'s C.P.L. § 330.30 Mot.) Specifically, petitioner asserted that the existence of evidence that someone named Cimmarron Patterson ("Patterson") was the person who had actually attacked Lanier. (Resp't Opp'n at 5; Def.'s C.P.L. § 330.30 Mot.) To support this claim, petitioner submitted a written statement by Patterson, in which the latter assumed responsibility for the attack on Lanier. (Resp't Opp'n at 5.) The statement also included Patterson's statements that he had recently been discharged from a mental institution, that he cut Lanier because he felt threatened by him, and that he had informed petitioner of all of this soon after the attack. (*Id.* (citing Def.'s C.P.L. § 330.30 Mot.).)

Regarding the first of these two claims (*i.e.*, that the prosecution improperly withheld information as to a potential accomplice's identity), respondent countered that the accomplice's name and location was disclosed to defense counsel prior to trial, and furthermore, that petitioner failed to show that the accomplice actually would have provided exculpatory evidence. (*Id.*) As to petitioner's second claim, respondent argued that Patterson's statements did not constitute newly discovered evidence because—in Patterson's own words—he disclosed all such information to petitioner the day after the crime, approximately ten months before trial. Moreover, the fact that Patterson had recently been released from a mental institution diminished his statements' credibility and reduced the likelihood that,

had they been released during trial, the verdict might have been more favorable to petitioner. (*Id.* at 6 (citing People's Resp. to Def.'s C.P.L. § 330.30 Mot.).)

The New York Supreme Court denied petitioner's C.P.L. § 330.30 motion on July 30, 2002, holding that the alleged accomplice's identity had been provided to defendant sufficiently before trial; Patterson's statement was not "newly discovered evidence" under C.P.L. § 330.30; and petitioner could not show that the verdict would have been more favorable to him had Patterson's statements been introduced. (*Id.* (citing County Ct.'s July 30, 2002 Decision Denying Def.'s C.P.L. § 330.30 Mot.).)

### 2. Petitioner is Deemed a Persistent Violent Felony Offender

During proceedings held on February 11, 2002, petitioner was sentenced to twenty-five years to life imprisonment for assault in the second degree, and to lesser sentences on the remaining convictions. (*Id.*) The court also deemed petitioner to be a persistent violent felony offender ("PVFO"), predicated on prior convictions from 1989 (Indictment Number 6913) and 1995 (Indictment Number 86801). (*Id.* at 6–7.)

### 3. State Court Review of Petitioner's Convictions

Petitioner appealed his conviction to the New York State Appellate Division, Second Department, raising several arguments: (1) his right to due process was violated by an incorrect C.P.L. § 710.30 notice, and further, by the prosecution's failure to disclose Police Officer Harold Gross's grand jury minutes at petitioner's hearing; (2) petitioner was entitled to a *Wade* hearing; (3) trial testimony of Detective Fiero, Police Officer Troy Wright, and Officer Harold Gross

---

[2] Petitioner's first C.P.L. § 330.30 motion does not contain page numbers. Accordingly, the Court cites to the document in full, in the interest of avoiding improper designation of page numbers.

reinforced identification of the prosecution's witnesses; (4) petitioner's alleged statement to Parole Officer Billings was not an admission or confession, and should not have been admitted in evidence against petitioner at trial; (5) the prosecution failed to disclose a note that contained exculpatory evidence before trial, constituting a *Brady* violation; (6) the prosecution failed to establish probable cause for petitioner's arrest; (7) petitioner's counsel was ineffective at trial;[3] (8) dismissal of the indictment was warranted pursuant to C.P.L. §§ 190.25, 190.35, 190.55, and 210.35(5); and (9) the government committed various forms of misconduct, including prosecutorial misconduct, and selective and malicious prosecution. (Resp'n Opp'n at 8.)

Additionally, assigned appellate counsel submitted a brief on petitioner's behalf raising the following arguments: (1) admission of petitioner's statement to his parole officer constituted improperly admitted hearsay; (2) reference to petitioner's previous criminal convictions improperly prejudiced the jury; (3) the prosecution's references to gang activity created a damaging image of petitioner as a violent gang member, thereby depriving him of a fair trial; (4) the court failed to adjudicate petitioner's motion to dismiss the indictment at the end of trial; and (5) the court improperly dismissed petitioner's challenge of the jury panel without conducting a proper hearing. (Resp't Opp'n at 7–8 (citing Appellate Division Br. of Def.'s Assigned Counsel).)

The government submitted separate briefs in response to both petitioner's *pro se* arguments and counsel's brief. The government's main position was that petitioner's claims were, for all intents and purposes, forfeited, unpreserved, or meritless. (*Id.* at 9 (citing People's Resp. to Def.'s First C.P.L. § 440.10 Mot. at A–84 to A–145).)

Petitioner's conviction was unanimously affirmed. *See People v. Nealy*, 32 A.D.3d 400 (2d Dep't 2006). In particular, the court reached the following conclusions: (1) there was sufficient evidence supporting a finding of probable cause as to petitioner's arrest; (2) evidence concerning petitioner's membership in a gang did not constitute reversible error; (3) petitioner's statements to his parole officer were properly admitted pursuant to the party admission exception to the hearsay rule; (4) the prosecutor did not commit a *Brady* violation regarding the alleged accomplice, as this information was disclosed to the defense before trial and was not exculpatory in nature; and (5) the record before the court showed that defendant had meaningful representation at trial. *Id.* at 401–03. Those claims that the court did not specifically address on the merits were dismissed as "unpreserved for appellate review." *Id.* at 403.

Petitioner then filed a *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10. (*See* Def.'s First C.P.L. § 440.10 Mot.) Petitioner argued (1) lack of a timely preliminary hearing in accordance with C.P.L. § 180.80, and (2) ineffective assistance of counsel, alleging that his attorney did not sufficiently investigate petitioner's case or locate eyewitnesses who could provide exculpatory testimony. (*Id.*)[4]

---

[3] In support of his ineffective assistance of counsel claim, petitioner asserted that trial counsel "failed to call witnesses at the [pretrial] hearing on defendant's behalf." (Resp't Opp'n at 9 (quoting People's Resp. to Def.'s First C.P.L. § 440.10 Mot. at A–37 to A–82).)

[4] Petitioner's first C.P.L. § 440.10 motion does not contain page numbers. Accordingly, the Court cites

Petitioner also asserted that defense counsel's signature on the felony-hearing waiver had been forged. (*Id.*)

On March 14, 2007, the court dismissed petitioner's motion. The court concluded that petitioner's argument for vacatur of conviction due to failure to receive a preliminary hearing under C.P.L. § 180.80 was without merit; petitioner's allegations of a forged document were not supported by any evidence in the record; petitioner was represented by competent counsel at all stages of his proceedings; and petitioner's argument that counsel failed to call specific witnesses at trial had no evidentiary support in the record. (*People v. Nealy*, Ind. No. 973-cv-01 (N.Y. Sup. Ct., Nassau Cnty. Mar. 14, 2007), ECF. No. 1 at 15–17.) Petitioner applied for leave to appeal the New York Supreme Court's denial of his first C.P.L. § 440.10 motion. On August 21, 2007, petitioner's request for leave to appeal was denied.

On July 30, 2007, petitioner moved under C.P.L. § 440.20 to set aside his sentence. (*See* Def.'s C.P.L. § 440.20 Mot. & Reply.) He argued that the court improperly sentenced him as a PVFO, that his counsel was ineffective at the PVFO hearing, and that his appellate counsel during the challenge to his 1995 conviction was ineffective. (Resp't Opp'n at 12–13 (citing Def.'s C.P.L. § 440.20 Mot.).) Before the court had decided petitioner's motion to set aside the sentence, however, petitioner filed a second motion under C.P.L. § 440.10. He asserted various denials of his constitutional rights, and alleged that he had not been afforded a C.P.L. § 180.80 hearing, and that he had been provided with ineffective assistance of counsel. (*Id.* at 13;

*see also* Def's Second C.P.L. § 440.10 Motion, at 3–6.) On December 19, 2007, the court denied nearly all of petitioner's claims on procedural grounds. As to petitioner's ineffective assistance of counsel claim, the court concluded that the claim was previously addressed in a prior C.P.L. § 440.10 motion, that plaintiff had failed to show prejudice arising from counsel's alleged shortcomings, and in any event, that counsel was effective. (Resp't Opp'n at 15.) Petitioner sought leave to appeal this decision; his application was denied. (*Id.*)

Petitioner filed a third motion under C.P.L. § 440.10, again claiming ineffective assistance of counsel, but this time, also raising a claim of newly discovered evidence. (*Id.*) Petitioner withdrew this motion, however, before it was considered by the court. (*Id.* at 15–16.)

In August 2008, petitioner filed his fourth motion to vacate his judgment of conviction under C.P.L. § 440.10. (*Id.* at 16.) Again, he asserted ineffective assistance of counsel, based on counsel's failure to interview Antoine, petitioner's alleged accomplice, and that he had newly discovered evidence that entitled him to vacatur of his judgment of conviction. (*Id.*) That motion was denied in December 2008. (*See* ECF No. 11.) However, petitioner did not seek leave from the Appellate Division to appeal the denial of this motion.

### 4. The Instant Petition

Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 22, 2008. Respondent filed a motion to dismiss the writ of habeas corpus petition and a memorandum of law in opposition on December 2, 2008. Petitioner submitted a reply and memorandum of law in support thereof dated February 17, 2009.

---

to the document in full, in the interest of avoiding improper designation of page numbers.

In his original habeas petition, petitioner contended that his conviction was (1) based on evidence acquired during an unconstitutional search and seizure; (2) obtained in violation of his privilege against self-incrimination because his parole officer alleged that petitioner had made an incriminating statement; (3) obtained by the prosecutor's wrongful failure to disclose favorable evidence (namely, that an alleged accomplice passed the knife to the assailant, the name of whom the prosecutor allegedly did not disclose until the eve of trial); (4) due to ineffective assistance of counsel (specifically, counsel failed to call an alibi witness favorable to the defense, but called one whom counsel knew would testify falsely and who had a criminal record); (5) the result of the prosecutor's conspiring with two defense attorneys and a parole officer, engaging in selective prosecution and malicious prosecution, and forcing defense counsel to waive petitioner's rights; and (6) generally unconstitutional because his 1995 conviction was unconstitutional.

On January 3, 2012, petitioner submitted an amended petition for writ of habeas corpus in which he raised the additional claim that he is actually innocent. On April 19, 2012, respondent submitted a response to petitioner's actual innocence claim, and on May 3, 2012, petitioner submitted his reply.

The Court has fully considered all of the submissions and arguments of the parties. It addresses each of petitioner's claims in turn.

## II. DISCUSSION

Respondent argues that the instant petition should be denied because petitioner's claims do not present a basis for habeas corpus relief. For the reasons set forth below, the Court agrees and dismisses the instant petition.

### A. Procedural Analysis

#### 1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them, *see Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (alteration in original) (internal quotation marks omitted).

Generally, to establish exhaustion, passage through the state courts, in and of itself, is insufficient. *See Picard*, 404 U.S. at 275. To provide the State with the necessary "opportunity," the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365–66. "A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones v. Keane*, 329 F.3d 290, 294–

95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)) (internal quotation marks omitted). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191; *see also United States ex rel. Rogers v. LaVallee*, 463 F.2d 185, 187 (2d Cir. 1972). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192.

### 2. State Procedural Requirements

Similar to a failure to exhaust a claim, a habeas petitioner's failure to satisfy a state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted).

Even where a plaintiff properly exhausts his claim, however, exhaustion "does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)

(citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744–51)). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray*, 518 U.S. at 162.

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect accorded to state judgments. *See House v. Bell*, 547 U.S. 518, 536 (2006). The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's right to enforce its laws while maintaining its judicial procedures as it sees fit. *Coleman*, 501 U.S. at 730–31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750. A miscarriage of justice occurs in extraordinary cases, such as a constitutional violation resulting in the conviction of an innocent individual. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### B. Application

### 1. Fourth Amendment Claims: Probable Cause and Legality of Seizure

Petitioner's claim that there was no probable cause for his arrest and that police illegally seized petitioner is barred from review.

It is well-settled that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Second Circuit has further explained that, under *Powell*, "review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). Courts have described such a breakdown as occurring when the state court "failed to conduct a reasoned method of inquiry into the relevant questions of fact and law." *Id.* at 71 (citation and internal quotation marks omitted).

Here, it is clear that New York has adequate corrective procedures for litigating Fourth Amendment claims, which are set forth in C.P.L. § 710.10 *et seq. See, e.g.*, *Capellan*, 975 F.2d at 70 n.1 ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'" (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)); *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983) (New York's procedure for litigating a Fourth Amendment claim in a criminal trial complied with requirement that state provide an opportunity to litigate such claims); *see also Blagrove v. Mantello*, 104 F.3d 350, 350 (2d Cir. 1996) (where defendant's "Fourth Amendment issues were raised before the trial court in the suppression hearing and before the Appellate Division in [his] pro se brief," defendant's "Fourth Amendment argument is barred [from federal habeas review] because the issue was fully and fairly litigated in the state courts.").

It is also clear that defendant was able to take advantage of such procedures. As set forth *supra*, plaintiff raised his Fourth Amendment claims in both the lower court proceedings, and also, on appeal to the Appellate Division, which affirmed the lower court rulings. Indeed, the state court held a pretrial hearing at which petitioner was able to cross-examine the prosecution's witness, present his own evidence, and raise any legal arguments in support of his suppression motion. Thus, the record reveals no "'disruption or obstruction of a state proceeding' typifying an unconscionable breakdown." *Capellan*, 975 F.2d at 70 (quoting *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)).

Instead, the record clearly shows that the state court conducted a reasoned and thorough method of inquiry into the relevant facts, and that the Appellate Division, on review of petitioner's claims, affirmed the lower court's determinations. *See Nealy*, 32 A.D.3d at 401 ("[T]he People presented sufficient evidence at the hearing to demonstrate that there was probable cause . . . . The hearing record reveals that several days after one complainant was slashed in the face and the other complainant was threatened with being slashed, the two complainants approached police officers patrolling the parking lot of a bar and identified to the officers the defendant standing nearby as the assailant. The officers then approached the defendant . . . . When [they] reached the defendant and asked him to come with them, the defendant started to run away and kept running despite their orders to stop. Under these circumstances, the officers had

probable cause to believe that the defendant was the complainants' assailant." (internal citations omitted)). Petitioner here does not contend that he was denied an opportunity to fully and fairly litigate his Fourth Amendment claims in the lower courts. Because the record shows, and petitioner does not contest, that petitioner did, in fact, receive a full and fair opportunity to raise his Fourth Amendment challenges, they are ineligible for habeas relief and beyond the scope of this Court's consideration. *See Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991) (noting that under *Stone v. Powell*, "federal habeas corpus relief is not available on the ground that evidence produced at trial was the result of an unconstitutional search and seizure, unless the state denied the prisoner an opportunity for full and fair litigation of the claim"); *see also Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir. 1986) (stating that a federal habeas corpus court may not consider a Fourth Amendment claim if the state already has provided a full and fair opportunity for litigation of the same).

In short, having fully availed himself of New York's corrective procedures as to his Fourth Amendment claims, petitioner has had an opportunity for full and fair litigation of the claim; he therefore may not raise it on federal habeas review.

Even when a claim is procedurally barred, a federal court may still review such a claim on the merits if a petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 749–50. Here, petitioner has provided no explanation for the default, nor has he demonstrated prejudice resulting therefrom or a miscarriage of justice. On careful consideration of the record, the Court

likewise finds no such prejudice or miscarriage of justice. Accordingly, petitioner's Fourth Amendment claims are not subject to federal habeas review.

### 2. Fifth Amendment Claim

Petitioner's claim that his conviction was obtained in violation of his privilege against self-incrimination is procedurally barred. Parole Officer Billings' testimony, which led to the introduction of a note in evidence (allegedly containing an incriminating statement on the part of petitioner), was challenged on appeal; however, it was challenged as improperly admitted under the hearsay rule. *Nealy*, 32 A.D.3d at 402. Thus, petitioner's Fifth Amendment claim concerning the note and its incriminating statement is not exhausted.

Generally, a petitioner must have fairly presented his claim and exhausted its available remedies at the state court level before a federal court may grant relief on a ground raised in a habeas corpus petition. *See* 28 U.S.C. § 2254 (b) & (c). Specifically, "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

When claims in a federal habeas petition have not been exhausted, the federal court may determine that no available procedures remain in state court by which a petitioner may exhaust the claims. *See* 28 U.S.C. § 2254(b) (petition shall not be granted unless exhaustion has occurred or "there is absence of available State corrective

process"); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). "In such a case the habeas court theoretically has the power to deem the claim exhausted." *Aparico*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)). Here, petitioner no longer has any state remedies available to him with respect to Fifth Amendment claim because New York's procedural rules prevent him from raising this claim in a New York court. *See, e.g.*, *Moss v. New York*, No. 10-CV-5840 (SJF), 2014 WL 585928, at *9 (E.D.N.Y. Feb. 12, 2014) (citing C.P.L. § 440.10(2)(c) (barring review of claims that could have been raised on direct appeal)); *see also St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) ("[T]he failure to have raised the claim on direct review now forecloses further collateral review in state court."); *Aparico*, 269 F.3d at 91 ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."). Thus, petitioner meets the technical requirements for exhaustion. *Coleman*, 501 U.S. at 732. However, petitioner's claims are procedurally defaulted. *See, e.g.*, *Moss*, 2014 WL 585928, at *9 (failure to raise claims on direct appeal resulted in procedural default, barring federal habeas review).

Where a claim is procedurally defaulted from review because it was not fairly presented to the state courts, the federal court has the authority to consider the claim only when the petitioner can establish both cause for the procedural default and actual prejudice resulting from it, or that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 318–21 (1995); *Reed v. Ross*, 468 U.S. 1, 11–13 (1984); *Grey*, 933 F.2d at 121. Petitioner has shown none of the above factors, nor does the record reflect any such elements. Thus, petitioner's Fifth Amendment claim remains procedurally barred and outside the scope of federal habeas review.

3. Ineffective Assistance of Counsel Claim

Respondent contends that a portion of petitioner's ineffective assistance of counsel claim—that his counsel failed to call an alibi witness—is unexhausted. (Resp't Opp. at 22.) At the time respondent filed its opposition, petitioner had raised the issue in his fourth C.P.L. § 440.10 motion, which the New York Supreme Court had not yet decided. Only several days after filing its opposition, respondent informed this Court that petitioner's motion was denied. (*See* ECF No. 11.) Nonetheless, respondent maintained that petitioner's ineffective assistance claim remained unexhausted because he failed to seek leave from the Appellate Division to appeal the decision. (*See id.*) This is incorrect. By letter dated July 27, 2009, petitioner submitted a July 15, 2009 order from the Appellate Division denying his application to appeal from the denial of his fourth C.P.L. § 440.10 motion. (*See* ECF No. 20.) Accordingly, the Court considers petitioner's ineffective assistance claim (based on his counsel's alleged failure to call an alibi witness) to be properly exhausted. *See, e.g.*, *Ramos v. Superintendent, Sing Sing Corr. Facility*, No. 11-CV-4929 (VB), 2014 WL 243148, at *5 (S.D.N.Y. Jan. 22, 2014) (claim was properly exhausted where, even though petitioner did not exhaust claim on direct appeal, he raised it in C.P.L. § 440 motion, the state court denied the claim on the merits, and petitioner sought leave to appeal from the Appellate Division); *Anthoulis v. New York*, No. 11-CV-1908 (BMC), 2012 WL 194978, at *3 (E.D.N.Y. Jan. 23, 2012) ("[T]o properly exhaust an ineffective assistance of counsel claim that relies on evidence outside the pretrial and trial record, petitioner must raise it as part of a motion to

vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division.").

### 4. Various Claims of Prosecutorial Misconduct

Petitioner's particular claims of prosecutorial alleged misconduct, including forcing a waiver of petitioner's right to a speedy trial and conspiring to secure an unlawful conviction, are procedurally barred because they were not presented in state court. *See generally O'Sullivan*, 526 U.S. at 845.

Petitioner's claim of selective and malicious prosecution is barred from review on state procedural grounds. In fact, the Appellate Division dismissed this claim on the grounds that they were "unpreserved for appellate review." *See Nealy*, 32 A.D.3d at 403. When a state court relies on an independent and adequate state law, federal habeas review is foreclosed. *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review). This is true, even if the state court rules in the alternative on the merits of petitioner's claims. *See id.* at 724; *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar," *id.* at 263 (internal quotation marks omitted).

Because the state court relied on an independent and adequate state law, petitioner's selective and malicious prosecution claim is procedurally defaulted and, therefore, may not be raised on habeas review.

### 5. The 1995 Conviction Claim

Petitioner alleges that his sentence is unconstitutional because it was partially based upon an unconstitutional 1995 conviction. He also raised this contention in his C.P.L. § 440.20 motion. The New York Supreme Court rejected the petitioner's allegations, holding the "defendant is precluded by statute from contesting the use of his 1989 and 1995 convictions as predicate convictions for his adjudication as a PVFO." (*See People v. Nealy*, Ind. No. 973N-01 (N.Y. Sup. Ct., Nassau Cnty. Dec. 19, 2007), ECF No. 1, at 21.) Where "a judgment from a state court rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision," the claim is procedurally barred in a federal habeas corpus proceeding. *Harris v. Reed*, 489 U.S. 255, 260–61 (1989). The standard set forth in *Harris v. Reed*, applied to this context, places the petitioner's 1995 conviction outside the scope of review for this Court. Furthermore, petitioner's 1995 conviction does not "implicate a fundamental miscarriage of justice." *See Schlup*, 513 U.S. at 318–21.

### 6. Summary of Procedurally Barred Claims

Grounds one, two, five, and six are procedurally defaulted. In addition, petitioner has not shown cause for default, or any resulting prejudice or fundamental miscarriage of justice such that these defaults may be overcome. Moreover, assuming *arguendo* that these claims are

reviewable, the claims are patently without merit for the reasons set forth *infra*.

## B. Merits Analysis

### 1. Standard of Review

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by AEDPA, which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id*. at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "'some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* at 93 (alteration omitted) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### 2. Application

Petitioner has relied upon the briefs he submitted on direct appeal and in support of

his C.P.L. 440.10 motions, and presents seven grounds in support of his habeas petition: (1) petitioner's conviction was the result of an illegal seizure, as it was based on evidence acquired during an unconstitutional search and seizure, and arose from an arrest for which the police had no probable cause; (2) petitioner's conviction was obtained in violation of the privilege against self-incrimination because his parole officer presented evidence that should have been suppressed, including that petitioner made an incriminating statement; (3) the prosecutor failed to disclose evidence favorable to petitioner; (4) petitioner was deprived of effective trial counsel; (5) the prosecutor committed prosecutorial misconduct, including conspiring with the defense attorneys and a parole officer to secure an unlawful conviction, interfering with petitioner's right to counsel, committing selective and malicious prosecution, and forcing a waiver of petitioner's rights; (6) petitioner's 1995 conviction is unconstitutional and should not have been used against petitioner; and (7) petitioner is actually innocent of the underlying allegations, as another individual (petitioner's nephew) confessed to the crime, and further, an eyewitness attests that petitioner was not present at the crime scene. Although petitioner procedurally defaulted most of these claims, *see supra*, the Court addresses each of these claims in turn on the merits and discerns no basis for habeas relief.

### a. Fourth Amendment Claims

Petitioner argues that he is entitled to habeas relief because the police lacked probable cause to arrest him for an assault that occurred five days before his arrest. For this reason, he claims that he was illegally seized. The Court disagrees.

As set forth *supra*, the Court cannot grant relief on this ground because the petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court. *See Grey*, 933 F.2d at 121; *Jackson*, 781 F.2d at 297. It therefore is procedurally barred for the reasons set forth above. Petitioner also has offered no justification for the default, nor has he shown prejudice or a miscarriage of justice resulting therefrom. *See Coleman*, 501 U.S. at 749–50.

However, even if this Court could review the underlying merits of petitioner's Fourth Amendment claim, it still fails because petitioner has not demonstrated either that the state court ruling was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was an unreasonable determination of the facts in light of the evidence in the record.

The trial court and the Appellate Division decided petitioner's Fourth Amendment issue on the merits. Therefore, AEDPA deference applies. The state court had more than a sufficient basis to find probable cause to arrest for assault and criminal possession of a weapon. Grounds for plaintiff's arrest included, in particular: (1) information provided by Lanier to the police, including his statement that petitioner had not denied his role in assaulting Lanier, and (2) petitioner's attempted flight from police when they approached him to discuss Lanier's allegations. In short, there is nothing in the record to indicate that the state court's ruling that the police had probable cause to arrest petitioner was contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court hearing.

Accordingly, even if this Court could review petitioner's Fourth Amendment claim on the merits (which it cannot), the Court concludes that the claim lacks merit.

### b. Fifth Amendment Claims

Petitioner claims that statements he made to Parole Officer Billings (contained in a note and described by Parole Officer Billings at trial) about an encounter he had with the police were improperly submitted as evidence at trial. The note sets forth petitioner's account of the night he was allegedly stopped, searched, and questioned by the police regarding the incident at the Bamboo Lounge. Petitioner contends that his Fifth Amendment right against self-incrimination was violated by counsel's failure to suppress the evidence. Petitioner also points to inconsistencies in parole office records to discredit the accuracy of the contents of the note.

### i. Legal Standard

The Fifth Amendment's protection against self-incrimination is well-established. *See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself."). Its protections are triggered "when the accused is compelled to make a [t]estimonial [c]ommunication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976); *see also United States v. Hubbell*, 530 U.S. 27, 34 (2000).

The Supreme Court has declared that the privilege against self-incrimination is "an important advance in the development of our liberty—'one of the great landmarks in man's struggle to make himself civilized.'" *Ullman v. United States*, 350 U.S. 422, 426 (1956). Indeed, the Fifth Amendment "reflects many of our fundamental values and most noble aspirations." *Murphy v. Waterfront Comm. of N.Y. Harbor*, 378 U.S. 52, 55 (1964), *overruled on other grounds by United States v. Balsys*, 524 U.S. 666 (1998). Thus, the rights inherent in the Fifth Amendment "must be accorded liberal construction in favor of the right [the Fifth Amendment] was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). To that end, the Supreme Court established "*Miranda* warnings" as procedural safeguards to be offered a person in police custody, for the purpose of establishing a presumption that any subsequent statements were voluntary and free. *See generally Miranda v. Arizona,* 384 U.S. 436 (1966). The *Miranda* safeguards are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974). *Miranda* warnings do not function to bar all confessions made by un-Mirandized defendants. For *Miranda* to be triggered, a defendant must be subjected to custodial interrogation. Outside of that setting, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected." *Miranda*, 384 U.S. at 478.

### ii. Application

It is clear that the statements petitioner made to Parole Officer Billings were voluntarily made and not the product of custodial interrogation. Petitioner reported to the parole office and recounted a police stop and seizure of his own volition. Accordingly, the admission in evidence of plaintiff's note to his parole office did not violate petitioner's Fifth Amendment right against self-incrimination, even though Parole Officer Billings did not read petitioner *Miranda* warnings. *Cf. United States v. Harris*, No. 12-4862-CR, 2013 WL 6641549, at *1 (2d Cir. Dec. 18, 2013)

("'The test for custody is an objective one: whether a reasonable person in defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest.'" (quoting *United States v. Newton*, 369 F.3d 659, 671 (2d Cir. 2004))). Moreover, there is no evidence that petitioner was otherwise compelled to recount the stop and seizure. Finally, as to petitioner's objection to the admission in evidence of the contents of the note on the grounds that it was inaccurate, such a claim does not allege a violation of federal law and is therefore not cognizable on habeas review. *See, e.g.*, *Smith v. Graham*, No. 10 CIV. 3450 (JPO)(THK), 2012 WL 2428913, at *5 (S.D.N.Y. May 7, 2012) ("Evidentiary rulings are typically within the province of state law, and are thus only cognizable under habeas review if they are 'of a constitutional magnitude.'" (quoting *Perez v. Phillips,* 210 F. App'x 55, 56 (2d Cir. 2006))), *report & recommendation adopted*, 2012 WL 2435732 (S.D.N.Y. June 27, 2012).

### c. Failure of Prosecutor to Disclose Evidence Favorable to Petitioner

### i. Legal Standard

Turning first to the alleged suppression of evidence claim, under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). In order to prevail on a *Brady* claim, a petitioner must demonstrate that material evidence favorable to his case was not disclosed to him. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995) ("[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."). "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Failure to disclose such material merits relief only if the prosecution's failure "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). Thus, the three elements of a *Brady* violation are that: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler*, 527 U.S. at 281–82.

### ii. Application

Here, petitioner raised his claim regarding the prosecution's failure to disclose evidence favorable to petitioner on direct appeal. As such, petitioner has adequately exhausted his state remedies with respect to the claim. Petitioner unsuccessfully raised these claims in his appeal to the Second Department, and the New York Court of Appeals denied petitioner leave to appeal these issues. The Appellate Division specifically held that the issue was "without merit, since the information was provided to the defense before trial and was not exculpatory in nature." *Nealy*, 32 A.D.3d at 402 (citations omitted).

Under 28 U.S.C. § 2254(d)(1), where a state court's decision that there was no *Brady* violation is not "contrary to, nor an unreasonable application of, clearly established federal law," a petition for habeas corpus must be denied. *See Jones v. Artuz*, No. 97-CV-2063(NG), 2002 WL

31006171, at *6–7 (E.D.N.Y. Aug. 30, 2002) (holding that state court's *Brady* determination was not contrary to, or involve an unreasonable application of, clearly established federal law, and therefore, did not provide grounds for habeas relief).

In the case at hand, the state court determined that there was no *Brady* violation with respect to petitioner's claim that the prosecution was in possession of the alleged accomplice's (Antoine's) name and location, but failed to disclose it. The state court based its determination on the fact that the prosecution did in fact disclose the name and location of Antoine approximately one month before trial, giving the defense a sufficient amount of time in which to prepare use of this information. (*See* Tr. 57, 1250 ("Judge, I refer the Court and counsel again to *Rosario* material turned over at trial. I referred to this one before, to this particular one, under previously served documents . . . defense informed that the defendant's accomplice may be Antoine Alfred a/k/a Antoine Morgan. That was told to [defense counsel] at least prior to the last trial date which was set over a month ago . . . .")); *see United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (noting that *Brady* material generally must be disclosed in time for a defendant's effective use of the material at trial). Moreover, petitioner did not establish that the information pertaining to Antoine was actually "favorable" to the defense. *See Rojas v. Woods*, No. 07-Civ-6687 (DAB), 2009 WL 4639620, at *2 (S.D.N.Y. Dec. 3, 2009) (acknowledging that a "'true *Brady* violation'" requires a showing, in part, that the evidence at issue is "'favorable to the accused, either because it is exculpatory, or because it is impeaching'" (quoting *Strickler*, 527 U.S. at 281–82)). Lastly, petitioner did not show that the suppressed evidence was material to the finding of guilt.

*See Kyles*, 514 U.S. at 433–34 (citation and internal quotation marks omitted) (stating evidence is "material" for *Brady* purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). In sum, the state court found that the prosecution had not, in fact, suppressed the allegedly exculpatory evidence, and furthermore, that the evidence itself was neither favorable nor material to the accused. This Court agrees and concludes that habeas relief is not appropriate on this ground, as the state court's determination was neither contrary to, nor an unreasonable application of, federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.

d. Ineffective Assistance of Counsel

i. Legal Standard

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The

performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)) (internal quotation marks omitted). In assessing performance, a court must apply a "'heavy measure of deference to counsel's judgments.'" *Id.* at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id.* (quoting *Strickland*, 466 U.S. at 690). Moreover, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* at 588 (quoting *Strickland*, 466 U.S. at 690–91).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors are of a magnitude such that they "'undermine[] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63–64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). Additionally, it is important to note that "'[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

This Court proceeds to examine petitioner's ineffective assistance claims, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

### ii. Application

Petitioner's claim of ineffective counsel is two-fold. Specifically, he alleges the following: (1) counsel did not call a witness to testify that he asserts would have been favorable to the defense; and (2) counsel called an alibi witness who not only had a criminal record, but whom counsel knew would testify falsely. Neither of these claims satisfies *Strickland*'s standard of review.

Petitioner's claim regarding defense counsel's decision against calling Antoine to the stand is without merit. First, counsel has discretion to employ the defense strategy he or she deems most appropriate. The decision whether to call (or not to call, as the case may be) a witness is a discretionary one that, under the circumstances presented here, was not unreasonable.

In order to meet the first prong of the *Strickland* test, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' determined according to 'prevailing professional norms' . . . . Counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial." *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 688); *see also Davis*, 428 F.3d at 88 ("When assessing whether or not counsel's performance 'fell below an objective standard of reasonableness . . . under prevailing professional norms,' *Strickland* directs us to consider the circumstances counsel faced at the time of the relevant conduct and to evaluate the conduct from counsel's point of view." (quoting *Strickland*, 466 U.S. at 688–89)). The record does not show, and petitioner does not direct the Court to, any evidence establishing that counsel's decision against calling Antoine to the stand fell below an objective standard of reasonableness under prevailing professional norms. The most that petitioner alleges is that Antoine possessed exculpatory information and was willing to testify for the defense. In particular, petitioner suggests that Antoine's testimony might have created a dispute as to whether Antoine passed petitioner the razor blade during the incident at the Bamboo Lounge. Even if this were so, however, this does not lead to the clear conclusion that petitioner is free from guilt.

Petitioner's second claim challenging counsel's effectiveness contests his attorney's decision to call an alibi witness. However, petitioner does not show that counsel knew Lewis would testify falsely, or that Lewis was an unreasonable witness to call.

Generally, "a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no . . . tactical justification for the course taken." *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) (alteration in original) (citation and internal quotation marks omitted). Furthermore, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 689); *see also Bell v. Miller*, 500 F.3d 149, 156 (2d Cir. 2007) (explaining that, in order to show ineffective assistance, "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" (citation and internal quotation marks omitted)). For this reason, "[s]trategic choices made by counsel after thorough investigation . . . are virtually unchallengeable . . . and there is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Gersten*, 426 F.3d at 607 (citation and internal quotation marks omitted); *see also Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (explaining that representation is deficient only if, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" (citation and internal quotation marks omitted)). The decision of petitioner's counsel to have Lewis testify aptly falls into the trial strategy category. Petitioner points to no evidence showing that there was no tactical justification for counsel's decision to call Lewis, or that counsel's choice fell beyond the scope of reasonable professional assistance.

As the Second Circuit has held, "[j]udicial scrutiny of a counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight."

*Cox v. Donnelly,* 387 F.3d 193, 198 (2d Cir. 2004) (citation and internal quotation marks omitted). In this case, the Court concludes that there is no basis to second-guess counsel's decisions. *See Eze v. Senkowski*, 321 F.3d 110, 125 (2d Cir. 2003) (explaining that scrutiny is deferential because "'it is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable'" (alteration omitted) (quoting *Strickland*, 466 U.S. at 689)).

In sum, the Court has "assess[ed] the impact of [trial counsel's representation] in the aggregate," *Lindstadt*, 239 F.3d at 204 (emphasis omitted), and it concludes that petitioner's claims of ineffective assistance of trial counsel fail to demonstrate a basis for relief. Specifically, petitioner's claims that counsel failed to call certain witnesses during trial and called an alibi witness who had damaging effects, do not, taken individually or cumulatively, reach the constitutional threshold of professional unreasonableness as set forth by *Strickland*.[5] Petitioner's application for habeas relief on this ground is therefore denied.

---

[5] Because the Court concludes that petitioner has failed to establish that his counsel's representation fell below an objective standard of reasonableness, the Court need not consider the issue of prejudice. *See, e.g.*, *Palacios v. Burge*, 589 F.3d 556, 562 (2d Cir. 2009) (concluding that there was "no cause for [the court] to reach the 'prejudice prong'" of the *Strickland* test where petitioner "failed to satisfy the 'performance' prong of the *Strickland* test"). Even assuming *arguendo* that petitioner satisfied the performance prong of the *Strickland* test, petitioner has failed to establish any prejudice from counsel's performance.

### e. Prosecutorial Misconduct, Selective Prosecution, and Malicious Prosecution

Petitioner alleges several claims against the government (including that the prosecutor and the court interfered with petitioner's right to counsel, that the prosecutor engaged in a selective and malicious prosecution, that the prosecutor conspired with both defense attorneys to secure an unlawful conviction), as well as against his defense attorneys (including that they waived petitioner's rights, ordered Parole Officer Billings to commit perjury, and conspired with Parole Officer Billings to secure an unlawful conviction). Although some of these arguments are procedurally barred from review, all are without merit.

Conclusory allegations of impropriety are insufficient to warrant habeas corpus relief. *See generally United States v. Torres*, 129 F.3d 710, 715–17 (2d Cir. 1997). Petitioner has offered no evidence of conspiracy with respect to his claim as to Parole Officer Billings or as to the prosecution and defense. Additionally, petitioner's claim that the prosecutor and the court interfered with his right to counsel is similarly vague and fails to prove improper behavior. *See generally Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (stating that a party bringing a judicial misconduct claim has a "difficult burden of persuasion to carry," and "must overcome a presumption of honesty and integrity in those serving as adjudicators"). Regarding any remaining contentions petitioner may have as to prosecutorial misconduct, petitioner has failed to set forth a basis for habeas relief, providing little more than conclusory and vague assertions of misconduct. *Jones v. Poole*, No. 06-CV-7172 (NRB), 2007 WL 2456646, at *11 (S.D.N.Y. Aug. 21, 2007) (stating that "vague and conclusory claims are not sufficient bases for habeas corpus relief"). In short, petitioner has not

demonstrated that there is any merit to any of these claims.

As to petitioner's selective and malicious prosecution claim, this claim is procedurally barred for the reasons set forth *supra*, namely, because the state court decision rests on an adequate and independent state procedural ground. *See Nealy*, 32 A.D.3d at 403 (holding that defendant's selective and malicious prosecution claim, among others, was "unpreserved for appellate review"). It therefore is outside the scope of habeas review. In any event, petitioner has failed to demonstrate that this claim has any merit.

### f. Petitioner's Prior Convictions Claim

Petitioner's 1989 and 1995 convictions caused him to be categorized as a PVFO. Petitioner challenges this in his C.P.L. § 440.20 motion, asserting that he was wrongly sentenced as a PVFO because his prior convictions were constitutionally invalid. (*See* Def.'s C.P.L. § 440.20 Mot. at 3, 6–8.) A hearing was held to determine whether petitioner should be sentenced as a PVFO. Following the hearing, the court held that petitioner's record qualified him as a PVFO within the meaning of C.P.L. § 70.08(1)(a). Here, petitioner alleges that his sentence as a PVFO was unconstitutional because it was based, in part, upon the allegedly unconstitutional 1995 conviction.

Petitioner's claim is procedurally barred from review. The standard set forth in *Harris v. Reed*—noting the requisites for a state court's decision to be deemed procedurally barred (*i.e.*, if the decision rests on an independent and adequate state law ground)—when applied to this context, places petitioner's 1995 conviction outside the scope of review for this Court. The New York Supreme Court, relying on New York law, concluded that "defendant is precluded by statute from contesting the use of his 1989 and 1995 convictions as predicate convictions for his adjudication as a PVFO." (Decision on Def.'s C.P.L. § 440.20 Mot. at 2); *see also* C.P.L. §§ 400.15(8), 400.16(8). The Appellate Division denied petitioner leave to appeal the lower court's decision. Because the New York Supreme Court expressly concluded that petitioner's 1995 conviction claim was precluded by statute, it is barred from habeas review.

In any event, petitioner's claim is without merit. Petitioner's 1995 conviction does not "implicate a fundamental miscarriage of justice." *See generally Schlup*, 513 U.S. at 314 (citation and internal quotation mark omitted). Petitioner does not establish his innocence in regard to the prior conviction, nor has the Court found his claim of unconstitutionality to be valid. Thus, this claim does not provide a basis for habeas relief.

### g. Petitioner's Actual Innocence Claim

Petitioner asserts that he is "actually innocent" of the assault on Lanier at the Bamboo Lounge, directing the Court to information which he previously presented to the state courts following his conviction, and which he contends supports a finding of innocence. Specifically, petitioner points the Court to the following evidence: (1) an April 2002 statement made by Patterson, his nephew, shortly following his release from a mental institution, claiming that it was Patterson, and not petitioner, who committed the crime, and (2) a November 2007 statement from Shamel Howard, a fellow inmate of petitioner and prior convicted felony offender, who claims that he witnessed the incident at the Bamboo Lounge and did not recall petitioner being present at the time of the alleged assault. (*See* Pet'r's Am. Pet. for Habeas Relief ("Am. Pet.") at 5–8.) For the following

reasons, the Court concludes that petitioner fails to establish actual innocence.

In general, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). This is due to the fact that a court's role on habeas review is "'not [to assess] the petitioners' innocence or guilt but solely [to consider] the question whether their constitutional rights have been preserved.'" *Id.* (quoting *Moore v. Dempsey*, 261 U.S. 86, 87–88 (1923)). Generally, in order for an actual innocence claim "to be credible," it must be supported by a showing of "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Additionally, in establishing such a claim, a petitioner must show that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *see also Schlup*, 513 U.S. at 327. In making such an assessment, a court on habeas review must consider "all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, 513 U.S. at 328 (citation and internal quotation marks omitted).

Petitioner's evidence here is insufficient for purposes of establishing an actual innocence claim. To begin with, Patterson's supposed confession is not newly discovered evidence. As petitioner acknowledges in his various motions, Patterson himself states that, soon after the assault occurred, he told petitioner that Patterson committed the crime. (*See* Am. Pet. at 5.) Thus, petitioner was well aware of Patterson's confession before trial.

Moreover, Patterson's statement is not the type of reliable evidence that likely would have made it "more likely than not that no reasonable juror would have convicted him." *Fountain*, 357 F.3d at 255. Red flags concerning Patterson's credibility abound, including the facts that Patterson was petitioner's nephew, was recently released from a mental institution at the time he made the statement, and that he had a significant criminal record, including at least eight felony charges. Lastly, the fact that Patterson failed to present himself to authorities following his alleged participation in the slashing at the Bamboo Lounge—despite knowing that petitioner had been charged with the crime—casts doubt upon the veracity of his statement. *See People v. Dawson*, 50 N.Y.2d 311, 318 (1980) ("[T]here exists a wide variety of situations in which the natural impulse of a person possessing exculpatory information would be to come forward at the earliest possible moment in order to forestall the mistaken prosecution of a friend or loved one. In such situations, the failure to speak up at a time when it would be natural to do so might well cast doubt upon the veracity of a witness's exculpatory statements at trial.").

Regarding Howard's statement, it also lacks indicia of reliability necessary for purposes of establishing an actual innocence claim. Specifically, Howard, who has a lengthy criminal record, was housed in the same correctional facility building as petitioner, with various opportunities to speak with petitioner, at the time he provided the affidavit attesting to

petitioner's absence the night of the incident. (*See* Resp't's Supp. Mem. of Law at 7 (citing Ex. 4, Howard's NYSID Report); *see also id.* at 8 & n.5.) It stretches credulity to say that a fellow inmate, who also was present at the time of the Bamboo Lounge incident, came across petitioner in prison years later and recalled that petitioner was not one of the individuals present at the scene of the alleged assault.

In addition to the fact that petitioner's actual-innocence evidence consists of incredible statements with strong indicia of unreliability, the Court concludes that the prosecution's evidence of guilt here was strong. (*See id.* at 12 (citing Resp't's App. Div. Br. at 3–14).) Specifically, both the victim of the slashing and the victim's brother identified petitioner as the culprit. (Tr. 350–62; 411; 593–97; 619–20.) Additionally, when the victim, Lanier, confronted petitioner outside a bar several days following the assault, he explicitly asked petitioner why he had cut him. Petitioner made no denial of his involvement, instead stating, "could we squash it?" (*Id.* at 393.) Lastly, after Lanier approached police officers, identifying petitioner as his attacker, petitioner tried to conceal the bottom of his face and slip away; he then continued to flee from the police after he was asked about Lanier's allegations. (*Id.* at 402–03, 612.) Indeed, even petitioner's alibi, offered through a friend, was undermined by her telephone records. (*See* Resp't's Supp. Mem. of Law at 13 n.8 (citing NCDA's App. Division Br. at 10–11, 13–14).) Thus, petitioner's evidence does not undermine the strong evidence of his guilt.

In sum, the prosecution presented strong, credible evidence of petitioner's guilt. Petitioner's proffered proof of actual innocence does not show, in light of all the evidence, that no reasonable juror would

have convicted him. Therefore, habeas relief is not available to him on this claim.

\*     \*     \*

Having carefully analyzed all of petitioner's claims, the Court concludes that the state court decisions challenged by petitioner were neither contrary to, nor an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts. Moreover, the claims that petitioner failed to raise in state court are patently without merit. Similarly, petitioner fails to establish an actual innocence claim. Accordingly, petitioner's habeas petition is denied in its entirety on the merits.

## III. CONCLUSION

For the reasons set forth herein, the Court concludes that there is no basis for habeas relief under 28 U.S.C. § 2254. Therefore, the petition is denied in its entirety. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 25, 2014
      Central Islip, New York

\*    \*    \*

Petitioner proceeds *pro se*. Respondent is represented by Kathleen M. Rice, District Attorney, Nassau County, by Andrea M. DiGregorio, 262 Old Country Road, Mineola, NY 11501.